IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

KATHY BROWN                                                                                      PLAINTIFF

v.                              NO. 3:10CV00027 HDY

MICHAEL J. ASTRUE,                                                                          DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

BACKGROUND. Plaintiff Kathy Brown ("Brown") began her attempt to obtain benefits by filing applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). Her applications were denied initially, again upon reconsideration, and later by an Administrative Law Judge ("ALJ") following a de novo administrative hearing. The ALJ's decision was affirmed by the Appeals Council and became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Brown has now commenced this proceeding pursuant to 42 U.S.C. 405(g) and challenged the Commissioner's final decision.

-1-

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. The standard requires the Court to take into consideration "the weight of the evidence in the record and apply a balancing test to evidence which is contrary." See Heino v. Astrue, 578 F.3d 873, 878 (8th Cir. 2009) [internal quotations and citations omitted].

THE ALJ'S FINDINGS. The ALJ denied Brown's applications based upon findings he made pursuant to the five step sequential evaluation process. At step one, he found the following: "[Brown] alleged that she became disabled on October 3, 1999. The record showed substantial earnings every year from 1999 through March 30, 2007. ... Work after that is considered unsuccessful work attempt." See Transcript at 10. On the basis of those findings, he found that she engaged in substantial gainful activity from "October 3, 1999, the alleged onset date, through March 30, 2007." See Transcript at 10. At step two, the ALJ found that Brown's lone severe impairment is a back disorder. At step three, he found that she does not have impairment or combination of impairments listed in, or medically equal to, the governing regulations. He then assessed her residual functional capacity and found the following:

> After careful consideration of the entire record, the undersigned finds that [Brown] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), reduced by the requirement that postural activity should be performed on [an] *occasional* basis only (that is: for no more than 1/3 of the day, cumulative not consecutive).

See Transcript at 13. At step four, the ALJ found that Brown is capable of performing her past relevant work, a finding based in part upon the testimony of a vocational expert. Although that finding could have concluded the ALJ's analysis, he proceeded to step five where he found the following: "[e]ven if [Brown] is unable to perform any past relevant work, considering [her] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform." See Transcript at 15. Given the foregoing findings, the ALJ concluded that Brown is not disabled within the meaning of the Act.

BROWN'S ASSERTIONS OF ERROR. Are the ALJ's findings supported by substantial evidence on the record as a whole? Brown thinks not and advances four reasons why: (1) her subjective complaints were not properly evaluated, (2) her residual functional capacity was not properly assessed, (3) the hypothetical question at step four of the sequential evaluation process was built upon a deficient assessment of Brown's residual functional capacity and the required functional analysis was absent, and (4) "the ALJ erred by basing his step [five] determination upon the 'framework' of the grids and failing to receive vocational expert testimony about the erosion of the occupational base and the availability of other work when [Brown] has significant 'nonexertional' impairments," see Document 13 at 23. For the reasons that follow, the Court finds that the ALJ erred at step five but is nevertheless satisfied that his findings up through step four are supported by substantial evidence on the record as a whole.

STEP FIVE ANALYSIS.   Brown maintains that the ALJ erred at step five of the sequential evaluation process.  She maintains that he erred by "basing his step [five] determination upon the 'framework' of the [Medical-Vocational Guidelines or "Guidelines"] and failing to receive vocational expert testimony about the erosion of the occupational base and the availability of other work when [Brown] has significant 'nonexertional' impairments."  See Document 13 at 23.

The ALJ may not rely upon the Guidelines if the claimant suffers from non-exertional impairments that "diminish or significantly limit [her] residual functional capacity to perform the full range of Guideline-listed activities."  See Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) [internal quotation omitted].  Instead, the ALJ must obtain vocational expert testimony.  If, however, the claimant's non-exertional impairments do not diminish or significantly limit her residual functional capacity to perform the full range of Guideline-listed activities, use of the Guidelines is not prohibited.

The ALJ assessed Brown's residual functional capacity and found that she can perform light work.  He did not find that she can perform the full range of light work, though.  He instead found that her ability to perform light work is reduced by the requirement that she perform postural activities on an occasional basis only.  He appears to have nevertheless applied the Guidelines at step five because the postural limitation has little or no effect on her ability to perform light work.  See Transcript at 16.

The ALJ's use of the Guidelines at step five of the sequential evaluation process was in error because he failed to explain what appear to be inconsistent findings. On one hand, he found that Brown's ability to perform light work was reduced by the requirement that she perform postural activities on an occasional basis only, a limitation that can be non-exertional. See 20 C.F.R. 404.1569a(c). He specifically identified "occasional" to mean "for no more than 1/3 of the day, cumulative not consecutive." See Transcript at 13. On the other hand, though, he found that the postural limitation has little or no effect on her ability to perform light work. Although a plausible explanation for the apparently inconsistent findings may exist, the ALJ did not offer it.

The aforementioned error does not, however, conclude the review function of the Court. The ALJ made findings up through step four of the sequential evaluation process and found at step four that Brown can perform her past relevant work. He only proceeded to step five in order to make an alternate finding. Having reviewed the record, the Court is satisfied that his findings up through step four are supported by substantial evidence on the record as a whole.

BROWN'S SUBJECTIVE COMPLAINTS. Brown maintains that her subject complaints were not properly evaluated. She maintains that objective evidence supporting her claim of severe pain was ignored, her daily activities were mistakenly found to be inconsistent with severe pain, and too much emphasis was placed on her gait when she appeared at the administrative hearing.

In <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217-1218 (8th Cir. 2001), the Court of Appeals offered the following guidance in evaluating a claimant's subjective complaints:

> ... the ALJ must consider, in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; [the] duration, frequency and intensity of pain; [the] dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. <u>See Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir.1984). Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. <u>Id</u>. at 1322. ... The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts. ...

The record reflects that the ALJ cited Social Security Rulings 96-7p and applied those factors to the evidence, both medical and non-medical. He found that although Brown experiences some pain, her statements regarding the intensity, persistence, and limiting effects of her pain were not credible. He so found for several reasons, including a lack of medical evidence, the extent of her daily activities, her work activity after the alleged onset date, and her exaggerated gait at the administrative hearing.

The ALJ's findings as to Brown's subjective complaints are supported by substantial evidence on the record as a whole. The record reflects that he cited the governing legal authority, <u>i.e</u>., Social Security Ruling 96-7p. <u>See</u> Transcript at 13. He reviewed the medical evidence, <u>see</u> Transcript at 10-12, and found that it was insufficient to support her claim of severe pain. In that regard, he made two significant findings; they were as follows:

> In this case, a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of pain and degree of functional limitations alleged by [her].
>
> …
>
> The undersigned considered but granted little probative weight to [Brown's] testimony because although her history of back pain is well documented, the medical evidence did not support [her] ultimate allegation of disability. This conclusion is consistent with Dr. Campbell's remarks that he could not find a "corresponding anatomic cause" for [Brown's] pain in the MRI of the lumbar spine, which was essentially normal other than showing facet degeneration …

See Transcript at 14. The ALJ also considered the non-medical evidence, see Transcript at 13-15, evidence he found to not support her claim of severe pain.

With regard to Brown's assertion of error that objective evidence supporting her claim of severe pain was ignored, it is true that there is some medical evidence supporting her claim, evidence the ALJ noted.[1] Her assertion, though, is without merit. The ALJ did not find that there was <u>no</u> objective medical evidence supporting her claim of severe pain; instead, he found that the objective medical evidence supporting her claim was <u>insufficient</u>. He could and did so find as the evidence she cites is minimal.

---

[1] The record contains evidence of a "slight posterior lateral bulge of the disc on the right side which does not significantly impinge on the canal" and a "slight left posterior lateral disc bulge which mildly impinges on the nerve root." See Transcript at 184. The record contains evidence of Brown's "restricted" range of motion and tenderness and spasms in her back. See Transcript at 432. The record also contains evidence of "very minimal dextroscoliosis of the lumbar spine" and "[p]osterior facet joint effusions." See Transcript at 605. The ALJ specifically noted those findings. See Transcript at 11-12.

With regard to Brown's assertion of error that her daily activities were mistakenly found to be inconsistent with severe pain, substantial evidence on the record as a whole supports the ALJ's findings as to the extent of her daily activities. See Transcript at 107-116. Substantial evidence on the record as a whole also supports his finding that she had substantial earnings after the alleged onset date. See Transcript at 90-92.[2] Are those activities consistent with disabling pain? She has not shown any reason why the Court should disturb the finding that her daily activities are inconsistent with disabling pain.

With regard to Brown's assertion of error that too much emphasis was placed on her gait when she appeared at the administrative hearing, the ALJ indeed acknowledged that one factor he considered in discounting her credibility was her "exaggerated antalgic gait at the time of the hearing." See Transcript at 14. Did he err in doing so? The Court thinks not for at least two reasons. First, the ALJ may properly consider his personal observations of a claimant during the administrative hearing. See Lamp v. Astrue, 531 F.3d 629 (8th Cir. 2008). Second, his observations of Brown were not the only factor he considered in adjudging her credibility; instead, his observations of her were "only one among many" factors he considered in discounting her subjective complaints. See Transcript at 14.

---

[2] With regard to the substantial earnings Brown had after the alleged onset date, she maintains that "onset dates are often picked by the SSA caseworker who does the initial disability interview and [Brown] should not be penalized for a technicality that most claimants do not fully comprehend." See Document 13 at 17. The Commissioner's response is persuasive and is adopted by the Court. See Document 14 at 7.

BROWN'S RESIDUAL FUNCTIONAL CAPACITY. Brown maintains that her residual functional capacity was not properly assessed. In support of her assertion of error, she specifically maintains the following: (1) "nowhere in the ALJ's decision does he address whether [she] has the ability to work on a 'regular and continuing basis' for 8 hours a day, 5 days a week when she suffers from chronic pain which requires that she take a 2.5 hour nap daily and she rest[] while performing chores," see Document 13 at 20; (2) the determination of her residual functional capacity is flawed because a function-by-function assessment of her abilities was not performed; (3) the determination is also flawed because all of her impairments were not considered; and (4) the ALJ failed to consider that "a side effect of Hydrocodone is drowsiness," see Document 13 at 21.

A claimant's residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the claimant's] ability to function in the workplace." See Id. at 539.

The ALJ found that Brown is capable of performing light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). He found that her ability to perform light work is reduced, though, by the requirement that postural activity be performed on an occasional basis only. He supported his findings, in part, by adopting the findings made by Dr. Jim Takach ("Takach"), a medical consultant.

The ALJ's findings as to Brown's residual functional capacity are supported by substantial evidence on the record as a whole. He considered both the medical evidence, including the findings and opinions of her physicians and the state agency physicians, and the non-medical evidence, including her subjective allegations of severe pain.

With regard to Brown's assertion of error that "the ALJ's decision does not address whether she has the ability to work on a 'regular and continuing basis' for 8 hours a day, 5 days a week when she suffers from chronic pain which requires that she take a 2.5 hour nap daily and she rest[] while performing chores," see Document 13 at 20, the Commissioner's response is persuasive and is adopted by the Court. It is as follows:

> ... [A] residual functional capacity finding defines "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p. A "regular and continuing basis" means 8 hours a day, 5 days a week, or an equivalent work schedule. ... Accordingly, when the ALJ made his residual functional capacity finding, he expressly defined what [Brown] could perform on a regular and continuing, or full-time basis. ...

See Document 14 at 9 [emphasis in original].

With regard to Brown's assertion of error that a function-by-function assessment of her abilities was not performed, the Court is satisfied that the ALJ's assessment, while not comprehensive, was adequate. He considered the relevant evidence and addressed how it supports the assessment, making specific reference to Takach's findings. See

Transcript at 15, 446-453.[3] His findings are consistent with the findings made by Dr. Steve Owens ("Owens"), save Owen's findings regarding Brown's postural limitations and the amount of weight she can lift/carry. See Transcript at 423-430.[4] Given the findings made by Takach and other evidence in the record, it was not necessary for the ALJ to have obtained a consultative examination as she maintains.

With regard to Brown's assertion of error that all of her impairments were not considered, including her obesity, swelling, depression, and a "piriformis syndrome," it is true that there is some mention of those impairments in the record. See Transcript at 628 (excessive weight), 628 (swelling), 306-307, 621 (depression), and 558 (piriformis syndrome). The ALJ was aware of his obligation to consider all of her impairments in assessing her residual functional capacity, including the impairments that are not severe, see Transcript at 9, and the Court is satisfied that he fulfilled that obligation. Although he admittedly did not include Brown's excessive weight, swelling, depression, and "piriformis syndrome" in his assessment, she has failed to offer any evidence that the impairments impose any limitation on her functional capacities. For instance, with

---

[3] Brown maintains that the ALJ relied exclusively upon "the opinions of non-examining case workers, who are not physicians [footnote omitted], that [Brown can] perform light work." See Document 13 at 20. It is clear, however, that Takach is a licensed physician. See Transcript at 28-29.

[4] Takach found that Brown has postural limitations and can occasionally lift/carry twenty pounds and frequently lift/carry ten pounds. See Document at 447-448. Owens found that Brown has no postural limitations and can occasionally lift/carry fifty pounds and frequently lift/carry twenty-five pounds. See Transcript at 424-425. The ALJ could and did give greater weight to Takach's findings.

respect to her excessive weight, Dr. John Campbell simply noted that she was "somewhat overweight" and "a little bit of weight loss might be beneficial ..." See Transcript at 628-629. He did not find that her excessive weight causes her any limitation. With respect to Brown's depression, it appears that she was prescribed anti-depressant and anti-anxiety medication but there is no indication that her depression causes her any limitation and is anything more than situational in nature.[5] It is also worth noting that she did not allege depression in her applications for benefits, which is not an insignificant fact. See Dunahoo v. Apfel, 241 F.3d 1033 (8th Cir. 2001).

With regard to Brown's assertion of error that the ALJ failed to consider "a side effect of Hydrocodone is drowsiness," see Document 13 at 21, the record establishes otherwise. He considered the drowsiness caused by Hydrocodone and found that "she takes [two] Aleve instead [of Hydrocodone for pain]." See Transcript at 13.

THE HYPOTHETICAL QUESTION. Brown last maintains that the ALJ erred in the manner in which he crafted his hypothetical question at step four of the sequential evaluation process. She maintains that the question was built upon a deficient assessment of her residual functional capacity and the required functional assessment of her past work was absent.

"'[T]estimony from a vocational expert is substantial evidence [on the record as

---

[5] The notes of Dr. Vonda Houchin indicate that Brown was depressed because she did not want to be a burden to her family. See Transcript at 621.

a whole] only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.'" See McKinley v. Apfel, 228 F.3d 860, 865 (8th Cir. 2000) [quoting Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997)]. The question need not contain every impairment alleged by the claimant, see Haggard v. Apfel, 175 F.3d 591 (8th Cir. 1999), and need not contain the impairments that impose no restrictions on his "functional capabilities," see Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)

The record reflects that the ALJ posed a hypothetical question to the vocational expert at step four of the sequential evaluation process. In crafting the question, the ALJ incorporated by reference the findings as to Brown's residual functional capacity made by Takach. See Transcript at 22. The vocational expert testified that given Brown's residual functional capacity, she is capable of performing her past relevant work, which the vocational expert had previously testified involved light work. See Transcript 20-21.

The Court finds nothing improper about the hypothetical question. The ALJ could and did adopt the assessment of Brown's residual functional capacity made by Takach, and the ALJ incorporated by reference that assessment into the question. Although the specifics of her past relevant work were not precisely identified, it is sufficient for the vocational expert to have testified that her past relevant work involved light work.

CONCLUSION. The Court finds that although the ALJ's use of the Guidelines at

step five of the sequential evaluation process was in error, there is substantial evidence on the record as a whole to support his findings at steps one through four. Having found at step four that she can return to her past relevant work, his error at step five is harmless. Accordingly, Brown's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

       IT IS SO ORDERED this ___28___ day of December, 2010.


                                              UNITED STATES MAGISTRATE JUDGE